This was an action brought against the bank to recover the amount of a deposit alledged to have been made by plff. He had made, as he contended, a deposit in the bank of $600, and he had an entry of that amount in his bank book, which the bank alledged was a mistake. The Bank's books credited him with $400 only.
The plff. produced and proved his bank book. It contained a credit under date of April 14, 1830, of a deposit in notes $600, altered to $400. He also produced a letter from Doct. Cooper the cashier, stating that he had made the alteration, being convinced there was a mistake in the original entry which was $600. The credit was in the handwriting of the cashier.
 The plff. here rested his case.
The deft. called Doct. Cooper the cashier. Objected to.
He would be liable to the bank for his negligence if there should be a recovery here, and the amount of the recovery would fix the amount of his liability. Therefore interested.
The defts. then produced a release under the seal of the corporation. To this it was objected that the local board of this branch of the Farmers' Bank could not execute a release, and could not use the corporate seal for such a purpose, without a resolution of the general board of directors. No such authority was proved. The court said they could only look to the seal, which carried with it the sanction of the corporation, but they intimated an opinion that the cashier would be *Page 118 
a competent witness without a release, from the necessity of the case. A servant of a tradesman may prove the delivery of goods and payment of money without a release, and so in many other cases persons similarly situated are admitted ex necessitate. 1 Ph. Ev. 95; 2 Stark. 753; 4 Term Rep. 590; 1 Str. 547.
Doct. Cooper sworn. Produced the book of original entries. Objected to.
Bayard. The books of a corporation though evidence as against corporators, are not evidence against strangers.
Rogers. A depositor or dealer is not a stranger to the corporation: and the books must be admitted from necessity.
Bayard. The checks are the best evidence until given up, which is not until the book is settled. Until then the entries on the books are but secondary evidence.
The court admitted the book with the oath of Doct. Cooper, proving it the book of original entries. We have admitted the cashier exnecessitate. The entries made by him as the agent or servant of the bank fall under the same rule. If he proves the book to have been regularly kept, and the entries there made correct, such entries are evidence. This is the scratcher or original account book of the bank. The corporation books alluded to are strictly the books containing the resolves and acts of the board of directors or other corporate authority.
Doct. Cooper. — Johnson made the deposit. I entered it on the) books of the bank and on his book. The entry in our book was $400: in his $600. He brought a check of Andrew C. Gray for $406 84, and mentioned to me the amount of his intended deposit. I then sent him to the teller's side to get the check changed, and his deposit with me was in notes. If his deposit had been more than the check, I should have taken it with the money, and entered it as a deposit of checks and notes, which is our invariable rule. I infer from my sending him to the teller, that the deposit was of a part only of the check. On a settlement made every two days we found our books correct. On the monthly balance it was also correct.
He produced a letter from plff. stating that his deposit was $600, in a check from Mr. Gray of $400, and $200 in cash.
Andrew C. Gray, Esq., called. Objected to by plff. and also by himself, stating that he had been the attorney of Johnson, and that any thing he knew in relation to the matter must have been derived from this relation.
Read, Jr., for deft. insisted on his examination. The privilege is that of the client and not of the attorney, and the court are to decide whether the disclosure was confidential, whether it was made to the witness as an attorney. If not, it is not protected. And the books confine it to disclosures made to an attorney in the cause. It depends upon the nature and time of the disclosure, and the fact to be proved. The object here is to prove the amount of a check given by Mr. Gray to Johnson, for money which he had collected, and also to prove that when the check was given, Johnson said he had not money enough to go to Philadelphia. This communication had no relation to any cause. *Page 119 
It was a fact stated not as between attorney and client, nor in any confidence, and is not protected because the gentleman to whom it was stated happened to be an attorney. 10 Mad. 40.
Bayard. Any knowledge that a man acquires from his clientbecause he is the attorney is confidential, and cannot be disclosed. Attorneys in England are on a different footing from attorneys here. There is no distinction in this state between attorneys and counsel. The characters are united.
The Court required Mr. Gray to be sworn. 2 Stark. 397; 2Saund. 566; 4 Term. Rep. 753.
Andrew C. Gray, sworn. — Produces the check dated 13th April 1830, for $406 84. It was for money collected by me for Johnson. He told me he was without funds. Johnson returned to Philadelphia the 17th.
Howell J. Terry sworn —
Is the teller of the bank. This check was presented to me on the 14th April 1830, and I cashed it. It was presented by and paid to Johnson personally. Independently of this claim there is a balance now due John of $8 75.
Bayard, counsel for plff. sworn at his own request.
I made a demand on the president of the bank for the balance due Johnson, before suit brought.
This testimony was objected to as not competent to be given in reply.
The Court. — A demand in the case of a claim on an individual is not necessary. The bringing a suit is a demand. But with regard to deposits in a bank the rule must be different. If a deposit be made today, a suit could not be immediately brought for it without demand. A demand being necessary, the proof of it constitutes a part of the plff's. case, and must be made in the opening. Testimony rejected.
Mr. Bayard, to the jury on the facts.
He contended that the evidence was sufficient to establish the deposit of $600; — and he relied upon the entry made by the cashier at the time of the deposit in the dealers bank book. This was the dealer's only evidence and the only security he had for the repayment of his money. He contended that on grounds of public policy and for the protection of individual rights, much exposed as they were to the power of these institutions, such an entry ought to be considered as conclusive upon the book and not be enquired into or contradicted by the testimony of the bank's officers, and he cited 4 Johnson'sReports 377, where judge Spencer said, that particular errors in a balanced account may be enquired into, but he adds, in my mind there is this exception, if an entry is made in a customer's bank book at the time of the deposit, the entry is conclusive. This distinction is a sound one and ought to be recognized.
Rogers for defts.
The question is not what the law ought to be but what the law is. The case in 4 Johnson does not decide the rule contended for. That was not the point in the cause: it was a mere obiter dictum or suggestion of the judge. The phrase is, "in my mind," there is this distinction. In 19 Johns. it is settled that the entry in the dealer's *Page 120 
seven years pay all liens. If this restriction were repealed and the lands of a debtor sold under a judgment existing prior to the repeal, which would in seven years pay all liens, could he establish the position that such sale was illegal and the repealing law void because a more prompt and enlarged remedy was afforded the creditor, than was given him by the law in force when the debt arose. Would the obligation of his contract be violated or impaired by the repeal, when that repeal merely enlarges the remedy?
In Virginia lands cannot be sold to pay debts, but as in England, a moiety is delivered by elegit to the creditor. If that state should adopt our system, would this change of the remedy impair the obligation of contracts existing at the time of the change and prevent the sale of lands to satisfy debts which originated before the change, because lands could not be seized and sold for the payment of debts when these debts were created? Such a modification of the remedy could not it is apprehended be deemed an impairing of existing contracts or of their obligation. Such acts would partake of the character of acts of limitation, and would all be held as relating to the remedy and not interfering with the contract or its obligation, as the right of a state to regulate the remedy and modes of proceeding in its own courts, and to prescribe the evidence which their courts shall receive and the effect of that evidence cannot be questioned. This is a right which the states have not parted with.
It does not belong to a debtor to complain that a legislative act impairs the obligation of his contract, unless the terms or effect of that contract be altered by such law.
He cannot complain that the obligation of his contract, which is performance of his agreement according to its stipulations, is impaired, because the legislature grants to his creditor further time means or remedies to coerce or compel the debtor to execute an agreement or contract which he has contracted to execute or perform without limitation as to time.
The debtor is not for upholding, or sustaining or continuing the existence or remedies of the contract, but for holding it at an end and as no longer of any obligation — not because he has performed what he engaged to do, but because his creditor has not forced him to that performance by a suit within a given time, which time was not provided for by the contract — and he contends that the obligation of his contract is impaired because an act of limitation extends to the person with whom he contracted further time for suit than was given by the law when the contract was made. That the extending or enlarging the remedy to compel the defaulter to comply with his contract — the holding the contract as not extinct annihilated or without a remedy to enforce it, impairs the obligation of that contract. Such in our judgment is not the construction to be put on the clause of the constitution of the United States, and we cannot consider the 10th section of the act of 1829 regulating the remedy on contracts and making a most equitable provision for the renewal of actions, where a party had not slept upon his rights beyond the time fixed by law, but asserted them by an action within time, which for some error has been reversed, can be held in relation to a debtor as impairing the obligation of his contract. *Page 121 
This action was on a bond given by William Larkin as manager of a lottery for the benefit of St. Peter's church — conditioned to account for and pay over moneys received, c.
In relation to the first plea the will of William Larkin was exhibited which nominated Thomas H. Larkin, his son, and John Rogers, his executors. The will being proved letters testamentary were granted to Rogers alone. Rogers filed the inventory and list of debts and made a settlement before the Register showing a balance of $6,920 31. Thomas H. Larkin executed to Rogers a release for this balance.
Plff. now produced evidence to charge Thomas H. Larkin as administrator de son tort; and he read the record of a suit brought on this bond against William Larkin in his lifetime. After his death a scire facias issued against Rogers and Thomas H. Larkin as his executors to make them parties. They appeared and moved to quash the writ, which was done. An. alias issued against the same defts. This also was quashed.
This evidence was objected to; and the Court were of opinion that it was not evidence to charge Thomas H. Larkin as an administrator deson tort, as he did not take defence to the action, nor had any occasion of pleading that he was not an executor.a
The plffs. went on to lay other testimony on this point before the jury, but the case was finally referred.
a If one sues for and receives money as executor he is chargeable as administrator de son tort. 3 Bal. 21; Went. 176; 1 Com.D. 377; Toller 37; 2 T. Rep. 97. Or pays money into court in another action.
If there be a lawful executor and an executor de son tort, a creditor may sue them jointly or severally. Went. 178.
If previously to action brought he pay over the money to the rightful executor that will be a good defence. If he plead ne unquesexecutor and it be found against him as it is a false plea he shall be charged with the whole debt de bonus propriis. If he pleadplene administravit he shall only be charged with the assets that come to his hands. 2 T. R. 97, 100; 3 Id. 587; 1Salik. 313; Went. 180; 3 Bac. 25; 1 Com. 379. What acts make a person liable is a question of law; whether proved or not is for the consideration of the jury. 2 Term. Rep. 97.
Regularly there cannot be an administrator de son tort when there is a rightful executor or administrator; but although there be a rightful executor who administered, yet if a stranger take the deceased's goods and claiming to be the executor, pays or receives debts or pays legacies he becomes administrator de son tort. 3Bac. 22; 1 Stark Rep. 31.
The agent of an executor proved a debt before the commissioners of bankrupt as executor. He was held liable as administrator de sontort. 4 Maule Selw. 177.
If one as agent of an executor take possession of the goods of the deceased he is not chargeable as executor de son tort. Peake N. P.Ca. 86; 4 M. S. 175; 1 Stark. 31. (Doubtful in the extent laid down.) See also 12 Modern 441.